# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# HARTFORD DIVISION

| | |
|---|---|
| IN RE: ) | CASE NO.        21-20380 (JJT) |
| ) | |
| JP Riggs, ) | |
|     DEBTOR. ) | CHAPTER        7 |
| ) | |
| JP Riggs, ) | |
|     MOVANT ) | RE: ECF NOS.   12, 14, 17 |
| ) | |
| vs. ) | |
| ) | |
| HEBREW HOME FOR HEALTH & ) | |
| REHABILITATION, LLC, ) | |
|     RESPONDENT. ) | |
| ) | |

## MEMORANDUM OF DECISION ON DEBTOR'S
## MOTION TO AVOID JUDICIAL LIEN

### I.   INTRODUCTION

This matter comes before the Court on JP Riggs' Motion to Avoid the Judicial Lien of Hebrew Home for Health & Rehabilitation, LLC ("Hebrew Home") under 11 U.S.C. § 522(f)(1)(A). ECF Nos. 12, 14 (the "Motion"). The Debtor seeks to avoid Hebrew Home's lien against certain real property known as 39 Burnham Street in Hartford, Connecticut that the Debtor claims as his homestead (the "Property").[1] The Motion is premised upon the contention that the Lien impairs the homestead exemption to which the Debtor is allegedly entitled under Conn. Gen. Stat. § 52-352b(t) and seeks to establish the value of the Property by virtue of a Competitive Market Analysis ("CMA") prepared by Joseph Aiello, a real estate broker with Berkshire Hathaway. Hebrew Home, who holds a judicial lien against the Property in the amount of $38,828.24, objected to the Motion, arguing that a CMA could not credibly establish the fair

---

[1] The Debtor amended his Motion once to address certain procedural deficiencies. *See* ECF Nos. 13, 14.

market value of the Property because Mr. Aiello was not a trained or licensed appraiser and, therefore, he could not give an opinion as to the fair market value. ECF No. 17 (the "Objection"). Hebrew Home further assailed the foundation of Mr. Aiello's opinion as to comparable properties and methodology.

On September 15 and 16, 2021, Mr. Aiello testified at an evidentiary hearing on the Debtor's Motion and Hebrew Home's Objection. The Court found that Mr. Aiello, although not qualified to provide an expert appraisal as to the fair market value of the Property, was nonetheless qualified as an experienced real estate broker to provide an expert opinion of the fair market value of the Property for purposes of lien impairment calculations. At the conclusion of that hearing, the Court took the matter under advisement. For the reasons set forth below, the Court finds that the Debtor presented sufficient evidence as to the fair market value of the Property as of the date of the bankruptcy filing for purposes of lien impairment calculations and, thus, met his burden under 11 U.S.C. § 522(f). The Court further finds that Hebrew Home failed to adequately rebut Mr. Aiello's expert opinion of the fair market value of the Property.

Accordingly, the Debtor's Motion is **GRANTED**, and Hebrew Home's Objection is **OVERRULED**.

## II. JURISDICTION

This Court has jurisdiction over this contested matter under 28 U.S.C. §§ 157(b)(1) and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (K), and one over which this Court has constitutional authority to enter a final judgment.

## III. BACKGROUND

### A. Facts and Procedural History

On March 10, 2021, a prepetition judgment entered in favor of Hebrew Home against the Debtor in the amount of $35,828.24 in the Connecticut Superior Court action *Hebrew Home for*

*Health and Rehabilitation, LLC v. JP Riggs*, docket number HHD-CV20-6130712-S (the "Superior Court action"). The judgment was recorded at Volume 7730, Page 150 of the Land Records of the City of Hartford, Connecticut.

On April 16, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. ECF No. 1 (the "Petition"). As of the Petition Date, the Debtor was the fee simple owner of the Property. On the Debtor's Schedule A, he listed the current value of the Property as $55,000.00. On his Schedule C, the Debtor elected the Connecticut state exemptions and claimed the Property as fully exempt under Conn. Gen. Stat. § 52-352b(t). The Debtor's Schedule D listed Hebrew Home's judgment lien in the amount of $35,828.24 arising from the award to Hebrew Home in the Superior Court action. Hebrew Home is the only claimant with a lien against the Property.

On May 21, 2021, the Debtor filed his Motion to avoid Hebrew Home's Lien under Section 522(f). The Debtor attached a CMA prepared by Mr. Aiello on May 19, 2021 which compared the Property to three other prior sales in the area that took place in December 2018 and April 2019 and valued the Property at $71,833.00. Debtor's Ex. 1, ECF No. 39-1 ("CMA No. 1"). CMA No. 1 contains the following disclosure statement: "This is a broker price opinion or comparative market analysis and should not be considered an appraisal. In making any decision that relies upon my work, you should know that I have *not* followed the guidelines for development of an appraisal or analysis contained in the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation."

On June 1, 2021, Hebrew Home filed its Objection to the Debtor's Motion wherein Hebrew Home argued that Mr. Aiello was not qualified to testify as to his opinion regarding the fair market value of the Property because he was only a real estate broker who did not have

specialized training in real estate appraisal methods.² ECF No. 17 (the "Objection"). Hebrew Home further alleged that Mr. Aiello's use of comparable properties that were sold more than two years prior was not a reliable or recognized method of valuation because it did not take into account the interior condition of the Property and resulted in understating the Property's value given the impact that Covid-19 had on real estate market conditions.³ On June 10, 2021, the Court held a status conference wherein Hebrew Home stated that it primarily took issue with Mr. Aiello's methodology and needed more information from the Debtor about his credentials. The Court continued the matter to allow the parties time to exchange further information and pursue formal or informal expert discovery.

At the continued status conference held on August 12, 2021, Debtor's counsel stated that it had Mr. Aiello perform a second CMA in response to conversations with Hebrew Home's counsel, this time using a wider market radius to locate comparable property sales. The Debtor explained that Hebrew Home's initial objection was that CMA No. 1 compared the Property with sales that were too old (*i.e.*, sales that pre-dated the onset of the COVID-19 pandemic), and therefore failed to accurately capture the current value of the Property. The Debtor maintained that there were no other recent sales within the geographic radius selected by Mr. Aiello in CMA No. 1.⁴ The Debtor then had Mr. Aiello prepare a second CMA using different search criteria than those used in CMA No. 1. Specifically, Mr. Aiello expanded the market radius to capture

---

² Hebrew Home's Objection did not explicitly state the grounds on which the Lien failed to impair the Debtor's homestead exemption. Hebrew Home did not provide any evidence of an alternative property value that would alter the outcome of the exemption impairment formula set forth in Section 522(f)(2)(A) of the Bankruptcy Code. Hebrew Home admitted, however, that its Lien was judicial in nature.
³ Hebrew Home failed to timely file a proof of claim asserting its secured status arising from its judicial lien. Despite this judgment creditor's failure to file a proof of claim, however, the Court notes that Section 506(d) of the Bankruptcy Code provides that this failure does not waive the creditor's secured position. *In re Kelly*, 311 B.R. 341, 344−45 (Bankr. W.D.N.Y. 2004) (holding that creditor's failure to assert secured status in a proof of claim did not prevent lien from surviving bankruptcy, except to the extent that lien would otherwise be avoided under § 522(f)); *In re Henninger*, 53 B.R. 60, 62 (Bankr. W.D.N.Y. 1985) (holding that judgment and mortgage creditor's liens would survive discharge of those claims under § 506(d) despite a failure to file a proof of claim).
⁴ This contention was not challenged by further evidence at the subsequent evidentiary hearing in September 2021.

4

additional sales from a larger geographic area in Hartford County. This second CMA was prepared by Mr. Aiello on August 3, 2021 and advanced a Property value of $97,088.00. Debtor's Ex. 2, ECF No. 39-2 ("CMA No. 2). CMA No. 2 compared the Property to sales occurring in November 2020 and March and June of 2021. At the close of the August 12 status conference, the Court imposed a pre-trial order requiring the parties to (1) exchange any expert valuation opinions at least five days before the hearing, and (2) file on the docket any other proposed exhibits or supplemental memoranda at least two days before the hearing. ECF No. 31

The evidentiary hearing on the Debtor's Motion and Hebrew Home's Objection took place on September 15 and 16, 2021, during which both parties offered documentary evidence on the issue of the Property's value. Mr. Aiello, however, was the only witness to advance an opinion of value on direct and cross examination. Hebrew Home did not disclose any expert witness and was otherwise noncompliant with the Court's pretrial order by failing to exchange any expert report with the Debtor and by failing to file any proposed exhibits until the day before the hearing. ECF No. 41. At the hearing, the Debtor advanced two values for the Property: a value of $71,833.00 from CMA No. 1 and an alternate value of $97,088.00 from CMA No. 2. The Debtor stated, however, that it was relying solely on the value advanced in CMA No. 1 because the allegedly comparable properties located outside any proximate radius in CMA No. 2 were not sufficiently reflective of the Property's market attributes. Hebrew Home inappropriately advanced an alternative value of $111,000.00 for the first time in its opening statement. It provided no evidence or expert opinion to support that contention once the hearing took place.

### B. Debtor's Proffered Expert Witness Mr. Aiello

#### i. Expert Qualifications

The testimony elicited from Mr. Aiello established that he has been in the commercial and residential real estate business for more than 20 years in Connecticut, has been a licensed

5

real estate agent for 17 years and is currently a real estate broker with Berkshire Hathaway, 1160 Silas Deane Highway, Wethersfield, Connecticut. Mr. Aiello readily acknowledged that he is not a real estate appraiser but is experienced and knowledgeable through his work as a broker at Berkshire Hathaway. He is also an employee of the Connecticut Department of Transportation where he has worked for the last 13 years performing commercial and residential real estate valuations for the state's portfolio of properties. He had previously prepared innumerable CMAs in his capacity as a real estate broker and was familiar with the Hartford real estate market. He has sold approximately five single-family homes in the City of Hartford, but none in the last year. He did not, however, have experience testifying in bankruptcy proceedings and had not previously testified as an expert witness providing an opinion on a contested property valuation.

On balance, his professional background, experience, and training nonetheless provided sufficient expertise and foundation for his advancement of an expert opinion on the value of the Property.

### ii. Expert Methodology

In preparing a CMA, Mr. Aiello testified that he would search the relevant town or city's website for the tax assessed value of the subject property. Mr. Aiello would then use the Multiple Listing Service (MLS) to search for recently sold homes in the same area that are as similar to the subject property as possible (also known as a sales comparison approach). He would start with the location of the subject property and work outwards to find comparable sales within a half mile radius. If there are no comparable sales within a half mile radius, he would expand his search radius. He would typically try to limit comparable sales to those made in the last two to three years. In locating a sale that is comparable to the subject property, Mr. Aiello would consider and adjust for factors such as the style of the house, number of bedrooms, square footage, condition of the house, overall market conditions, and dates of the sales. Mr. Aiello

would also conduct a drive-by inspection of the subject property, as he did in this case, but he generally did not inspect the property's interior. Nothing in the record rebutted that such a methodology was anything other than a generally reliable, recognized, reasonable, and appropriate valuation protocol for a CMA.

### iii. Preparation of CMA No. 1

Mr. Aiello prepared CMA No. 1 on May 19, 2021, approximately one month after the Debtor filed its Chapter 7 Petition. He searched the MLS for comparable sales within a 1.5-mile radius of the subject property. He included three comparable sales from the Blue Hills neighborhood in the City of Hartford: 43 Baltic Street ("43 Baltic"), 98 Euclid Street West ("98 Euclid"), and 285 Granby Street ("285 Granby") (collectively the "Comps"). These Comps were sold in December 2018 and April 2019. CMA No. 1 at 5−6. Mr. Aiello explained that 43 Baltic ultimately did not materially factor into his analysis because it was a foreclosure sale, which he testified was not appropriate to include in a CMA. When selecting and reviewing those properties, Mr. Aiello weighed various comparability attributes and made adjustments to equalize difference that may have affected the value.

CMA No. 1 shows that the Property was built in 1943 on 0.13 acres. CMA No. 1 at 5. It has merely 1,071 square feet of living space, which includes two bedrooms, two full bathrooms, and two fireplaces. *Id*. The Property also includes a detached garage. *Id*. The tax-assessed value of the Property is $34,965.00.[5] *Id*. The three Comps are listed as Cape Cod style homes with similar square footage and three bedrooms. *Id.* at 5−6. None of the Comps had a detached garage or a second full bathroom. *Id.* 98 Euclid had one fireplace, but 43 Baltic and 285 Granby had none. *Id*.

---

[5] This value is reflective of the City of Hartford's valuation for tax purposes at 70% of the fair market value.

### C. Stipulated Facts for Section 522(f)

The parties stipulated to the following facts relevant to the Section 522(f) hearing in order to narrow the issues and establish the applicability of the Debtor's claimed homestead exemption: (1) that Hebrew Home's Lien was a judicial lien; (2) that the subject Property was the Debtor's principal residence; and (3) that the Debtor properly asserted a homestead exemption under Conn. Gen. Stat. § 52-352b(t) regarding the Property and that Hebrew Home had not objected to the claimed exemption. The Court's review of the docket shows no timely objection to the exemption to have been interposed by the Chapter 7 Trustee or any other creditor.

## IV. DISCUSSION

### A. Section 522(f)

Section 522(f)(1) permits a debtor to avoid a judicial lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled" under federal or state law. 11 U.S.C. § 522(f)(1)(A). Section 522(f)(2) sets forth a formula to apply to determine whether a judicial lien impairs the debtor's exemption: "[A] lien shall be considered to impair an exemption to the extent that the sum of—(i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens." 11 U.S.C. § 522(f)(2)(A).

### B. Connecticut's Homestead Exemption Statute

At the time of this hearing, in Connecticut any "natural person" may claim an exemption in a homestead up to $75,000.00,[6] calculated based on the fair market value of the property less

---

[6] The State of Connecticut recently passed legislation raising the limit of the homestead exemption from $75,000.00 to $250,000.00, effective October 1, 2021. *See* 2021 Conn. Acts P.A. 21-161 (Reg. Sess.) (H.B. 6466) (repealing

the amount of any consensual or statutory lien(s). Conn. Gen. Stat. § 52-352b(t). The Court in *In re Kujan* set forth three requisites for real property to constitute an individual's statutory homestead under Connecticut law:

> Section 52-352b of the Connecticut General Statutes provides in relevant part as follows: "The following property of any natural person shall be exempt: . . . [t[he homestead of the exemptioner. . . ." Conn. Gen. Stat. § 52-352b(t). "Homestead" is defined in Section 52-352a of the Connecticut General Statutes in relevant part as follows: "'Homestead' means owner-occupied real property . . . used as a primary residence." Conn. Gen. Stat. § 52-352a(e). Thus, there are three requisites for real property to constitute an individual's statutory homestead. First, the individual must "own" the subject property within the meaning of Section 52-352a as of the relevant time. Second, the individual must "occupy" the subject property within the meaning of Section 52-352a as of the relevant time. Third, the subject real property must be "used as a primary residence" within the meaning of Section 52-352a as of the relevant time.

*In re Kujan,* 286 B.R. 216, 220–21 (Bankr. D. Conn. 2002).

### C. The Debtor's Burden as Movant

Generally, the debtor, as the movant, "bears the burden of proof by a preponderance of the evidence on every element of Section 522(f)." *In re Armenakis*, 406 B.R. 589, 604 (Bankr. S.D.N.Y. 2009) (citing *In re Banner*, 394 B.R. 292, 300 (Bankr. D. Conn. 2008)); *see also Soost v. NAH, Inc. (In re Soost)*, 262 B.R. 68, 74 (8th Cir. BAP 2001) (debtor, as the movant, bears burden of proof by preponderance of evidence on all elements of avoidance statute); *Premier Capital, Inc. v DeCarolis (In re Carolis)*, 259 B.R. 467, 471 (1st Cir. BAP 2001) ("Debtor has the burden of proof on all avoidance issues."). In cases where a party's objection to a motion for lien avoidance "rests upon a challenge to the debtor's claimed homestead exemption, Bankruptcy

---

and replacing Conn. Gen Stat. § 52-352b(t) with updated text, which included, *inter alia*, raising the ceiling of the homestead exemption amount to $250,000.00). Neither the Chapter 7 Trustee nor any other party or creditor raised the issue of retroactive application of the new homestead exemption limit to this Motion.

Rule 4003(c) shifts that burden to the [objector]" to prove that the exemption is not properly claimed. *In re Carpenter*, 559 B.R. 551, 555 (Bankr. D. R.I. 2016); Fed. R. Bankr. P. 4003(c).

It is undisputed that, as of the Petition Date, the Debtor owned the Property on the Petition Date, occupied the Property and otherwise used the Property as his primary residence, and that neither Hebrew Home nor any other party interposed any timely objection the Debtor's claimed homestead exemption. Thus, although there was no dispute as to whether the Debtor properly claimed his homestead exemption, the burden of proof nonetheless remained with the Debtor on any remaining elements of Section 522(f).

The Debtor must "prove three crucial facts in order to obtain § 522(f) relief: the value of the Property, the validity of [the] lien, and if valid, the value of [the] lien." *In re Hewitt*, 576 B.R. 790, 794 (Banrk. D. Vt. 2017). A necessary portion of the Debtor's burden of proof hinges on the value of the Property. Here, there is no question regarding the validity of the Lien or its value of $38,828.24. It is the value of the Property that remains the central issue of this contest. On the basis of the record herein, the Court finds that the Debtor has met his *prima facie* burden on each of these issues, but barely. The value of the Property will determine whether and to what extent the Lien is either avoidable or still attaches to the Property.

### D. Valuation of the Property

The Court now turns to the only expert evidence offered on the value of the Property: Mr. Aiello's comparative market analysis and his testimony on the valuation of the Property. The pertinent questions are (1) whether Mr. Aiello is qualified as a real estate broker to give an expert opinion on the value of the Property under the *Daubert* standard, and (2) whether the methodology used by Mr. Aiello in preparing CMA No. 1 and its content makes it relevant and reliable to the extent that it meets the threshold for admissibility under Rule 702.

"Under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), courts have a gatekeeping obligation to ensure that expert testimony presented to [the finder of fact] is reliable and relevant." *Lassen v. Hoyt Livery, Inc.*, No. 13-CV-1529 (VAB), 2016 WL 7165716, at *7 (D. Conn. Dec. 8, 2016); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), *Daubert*, 509 U.S. at 597; *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008).

Federal Rule of Evidence 702 provides the standard for expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Hebrew Home has contended that Mr. Aiello was not qualified to give a market valuation and did not use a methodology that could be relied on by the Court. Hebrew Home asserted that Mr. Aiello's failure to inspect the interior of the Property or visit the comparable properties, and the fact that he advanced two CMAs with contradictory opinions, seriously called into question his ability to provide a reliable valuation assessment. Hebrew Home further argued that Mr. Aiello was attempting to establish the current 2021 value of the Property by using comps that were too old and did not reflect the changing conditions in the residential real estate market brought about by COVID-19 (*i.e.*, that the average price of residential real estate had risen significantly).[7] The Court will address each of these arguments in turn.

---

[7] Hebrew Home gave a very sparse recitation of the law supporting its argument in its Objection. Although it did briefly challenge Mr. Aiello's qualifications in its Objection, it did not provide adequate briefing on the issue and did not explicitly mention a *Daubert* challenge until the first day of oral argument.

### i. Mr. Aiello's Qualifications

The Court will first address Hebrew Home's argument that a real estate broker, without being a licensed appraiser, is not qualified to offer an expert opinion of the fair market value of real property. Hebrew Home relies on *In re East*, 2016 WL 6952471 (Bankr. E.D. Tenn. 2016) for the proposition that real estate brokers and agents without specialized training in real estate appraising are not qualified to testify as to their opinions regarding fair market value. The Court disagrees.

Connecticut courts have repeatedly rejected the claim that Hebrew Home has raised. In numerous cases, courts in this state have concluded that the fact that a realtor is prohibited from acting as a real estate appraiser without a license pursuant to Conn. Gen. Stat. § 20-501 does not mean that he is precluded from testifying as to his opinion of a property's value where the trial court has found that the witness is qualified as an expert based on his education, training, and experience. *See Wheelabrator Bridgeport, L.P. v. City of Bridgeport*, 320 Conn. 332, 379−80 (2016) (collecting cases). It is thus well established that "a person who otherwise would be qualified as an expert witness to testify regarding the value of real property is not disqualified merely because the person is not a licensed real estate appraiser in this state."[8] *Id*. at 380; *see also Taylor v. King*, 121 Conn. App. 105, 120 (2010) (Conn. Gen. Stat. § 20-500(5) "does not include testifying as to the value of property . . . within the definition of 'engaging in the real estate appraisal business.'"); *Hutchinson v. Town of Andover*, 49 Conn. App. 781 (1998)

---

[8] The Connecticut Supreme Court has further explained that "[i]n contrast to the evidentiary and procedural rules governing expert testimony, the purpose of the statutory scheme governing the licensure of real estate appraisers is to protect members of the general public—who do not have the skills and experience of a trial judge to assess a person's competence to determine the value of real estate, and who do not have access to the tools of discovery and cross-examination under oath to assist them in making that assessment or in assessing the person's honesty—by requiring persons who wish to engage in the business of real estate appraisal first to establish their competency and honesty." *Id*. at 381. Recognizing that Connecticut's evidentiary and procedural rules differ from those on the federal level in certain respects, the *Wheelabrator* Court's general comparison between the purpose of evidentiary and procedural rules on expert witness testimony and the state statutory scheme governing licensure of real estate appraisers applies equally here.

(holding that Conn. Gen. Stat. § 20-501 is a licensing statute and does not preclude witness from testifying as to his opinion of value of where trial court found that witness's education, training and experience qualified him to testify as expert and defendant pointed to no evidence showing witness was engaged in business of real estate appraising).

Although *Wheelabrator* rests on issues of state statutes and procedural rules, federal bankruptcy courts in other states have come to the same conclusion: that real estate brokers are qualified as experts for purposes of providing valuation testimony and their lack of an appraiser's license or formal appraisal training affects only the weight accorded to their testimony. *See, e.g., In re Morse*, No. 17-61271, 2018 WL 6721090, at *6 (Bankr. N.D.N.Y. Dec. 20, 2018) ("the Court should not categorically reject a broker's opinion of value or bar a broker from testifying at a valuation hearing"); *In re Pichardo*, No. 12-13015, 2013 WL 1352308, at *4 (Bankr D.R.I. Apr. 3, 2013) (disagreeing with courts that "categorically reject a broker's opinion of value and bar a real estate broker from testifying at a valuation hearing"); *In re Smith*, 267 B.R. 568, 574−75 (Bankr. S.D. Ohio 2001) (holding that real estate broker of 30 years with limited appraisal training was qualified as expert for purposes of providing valuation testimony but admitting it was a close call).

Although it is nonetheless a close call here, due to his lack of testimonial focus and inexperience in trial proceedings, the Court finds that Mr. Aiello's professional qualifications and his facility in the use of relevant market valuation principles are indicative of his experience, training, and market knowledge necessary for comparative market analysis performed by a real estate broker. His testimony may not have been the most elegant, but he meets the baseline qualifications for a licensed real estate broker providing recognized and reliable valuation testimony. *Cf. Hebbler v. Turner*, No. CIV.A. 03-388, 2004 WL 414821, at *3 (E.D. La. Mar. 3, 2004) (disqualifying commercial real estate agent under *Daubert* for purposes of providing

opinion on valuation of commercial property because agent was neither a licensed real estate broker nor licensed appraiser; agent's opinion was only based on personal experience, review of lease documents and interviews with property owners; and, agent could not demonstrate generally accepted methods of commercial lease appraisal and report did not offer indication of method she used to come to her opinion).

### ii. Mr. Aiello's Methodology

The Court will now turn to Mr. Aiello's methodology and the admissibility of his expert opinion. At the hearing, Hebrew Home vigorously cross-examined Mr. Aiello, assailing not just his qualifications but challenging his methodology and the ultimate admissibility of his opinion. Despite Hebrew Home's aggressive approach, it failed to convince the Court of the invalidity of Mr. Aiello's opinion, or to offer any opposing expert testimony to afford the Court a contrary record on methodology, sales comparisons, or enhanced qualifications from which it might make its decision. The only contrary opinion advanced by Hebrew Home was its wholly unsubstantiated opening argument that the Property had a fair market value of $111,000.00. The Court is not persuaded by Hebrew Home's arguments or tactics. Although Mr. Aiello could have made different choices when preparing CMA No. 1, the Court finds that Mr. Aiello's opinion was sufficiently expert, reliable, and credible and that any minor shortcomings with his methodology in preparing CMA No. 1 go to the weight of his testimony, not its admissibility.

As previously stated, if an expert's testimony is relevant, reliable, and rests on a factual basis, it meets Rule 702's standard for admissibility. *See* Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments) ("rejection of expert testimony is the exception rather than the rule"); *Daubert*, 509 U.S. at 595 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *United States v. 14.38 Acres of Land Situated in*

*Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996) ("the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."). "It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of N.Y.*, 414 F.3d 381, 395 (2d Cir. 2005). "Disputes as to the strength of [a proposed expert witness's] credentials, faults in his . . . methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995).

The proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). To be relevant, an expert's opinion must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see Daubert*, 509 U.S. at 591. To be reliable, an expert's opinion must have "a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. To be admissible, an expert opinion "requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005) (citation omitted). Similarly, expert testimony must be excluded if it is "speculative or conjectural" or if it is based on assumptions that "are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017) (citation omitted).

In bankruptcy cases where the court, acting as the fact finder, is faced with determining a property's value, the court is typically aided by testimony from expert witnesses. The court has discretion in making this determination and "may consider the experts' opinions 'in light of all

the circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it,' and may assess 'the credibility of the expert witnesses and the weight to be accorded their testimony.'" *Found. Cap. Res., Inc. v. Prayer Tabernacle Church of Love, Inc.*, No. 3:17-CV-00135 (JAM), 2021 WL 4055305, at *4 (D. Conn. Sept. 2, 2021) (quoting *Brownstein v. Spilke*, 117 Conn. App. 761, 766 (2009)). "Put differently, the court is 'not bound by the opinion of expert witnesses,' but instead is 'privileged to adopt whatever testimony [it] reasonably believes to be credible.'" *Id*.

In this case, Mr. Aiello's testimony was relevant, credible and ostensibly reliable. "The valuation process is inherently speculative and rarely produces a value that is precisely accurate. A court must simply make the best educated guess based on the evidence before it. Even the opinions of experienced and licensed experts . . . are only as good as the assumptions upon which their opinions are built. Where an analysis relies on an inappropriate factor or otherwise fails to consider an important one, the court must assign less weight to that opinion." *In re Dickey*, No. 13-10318-WCH, 2015 WL 225392, at *7 (Bankr. D. Mass. Jan. 15, 2015). Although the Comps Mr. Aiello provided in CMA No. 1 were thin, both the market at that time, the tax assessed value of the subject Property, and the lack of other comparable sales or a controverting opinion supports the Court's admission of and reliance upon his opinion, the sole expert opinion in evidence.

Hebrew Home's arguments, that Mr. Aiello failed to inspect the interior of the Property, visit the comparable properties, or use a wider market radius, are not without merit. Those arguments, however, also go to the weight of Mr. Aiello's opinion, not its admissibility. *See McCullock*, 61 F.3d at 1044. Mr. Aiello's alleged failure to exercise what, in Hebrew Home's mind, would be the correct methodology, without a proper evidentiary foundation, could impact the probative value of his opinion but is not enough to warrant preclusion of his testimony. *See*

*Lassen v. Hoyt Livery, Inc.*, No. 13-CV-1529 (VAB), 2016 WL 7165716, at *10 (D. Conn. Dec. 8, 2016) (finding that expert's reliance on MapQuest and Google Maps to determine driver's routes in a Fair Labor Standards Act case did not warrant preclusion of his testimony because questions about his methodology went to weight, not admissibility).

All Hebrew Home had to do in this case to support its position on Mr. Aiello's credentials, methodology, or value was to proffer contrary expert evidence and/or an appraisal in conformity with the Court's pretrial order on the exchange of expert opinions. "[A]n assessment of the fair market value of a real estate parcel by an appraiser carries greater weight than that of a real estate broker who does not have the same specialized training. Although a broker relies upon his sales experience, a broker is not instructed in his or her valuation opinion by the industry standards and uniform guidelines to which a competent appraiser must adhere in preparing an appraisal and rendering an opinion of value." *In re Morse*, No. 17-61271, 2018 WL 6721090, at *6 (Bankr. N.D.N.Y. Dec. 20, 2018). In Hebrew Home's strategic failure to present any such evidence, it has failed to sufficiently rebut the Debtor's proof.

Accordingly, after careful review of the record, the Court finds that Mr. Aiello's testimony and his valuation assessment in CMA No. 1 should be accorded dispositive weight, particularly in light of the fact that Hebrew Home offered no contrary expert testimony and made unsubstantiated assaults on Mr. Aiello's expertise, choice of market radius, methods, and selection of comps.[9] Accordingly, for purposes of this Motion, the Court finds the value of the Property to be $71,833.00, the amount advanced in CMA No. 1.

---

[9] In particular, the Court took issue with Hebrew Home's attempt to introduce multiple documents purportedly showing MLS queries with additional comps closer in time to the Petition Date that, in Hebrew Home's opinion, Mr. Aiello should have used for the basis of his opinion. This attempt by Hebrew Home was unavailing. Hebrew Home was unable to authenticate those documents and was unable to establish that those MLS listings were available to Mr. Aiello in the MLS system at the time he prepared his CMA or were otherwise relevant to the Court's determination. Hebrew Home also belatedly attempted at trial to introduce a real estate agent as an expert witness for purposes of rebutting Mr. Aiello's testimony. Because Hebrew Home was in violation of the Court's pre-trial

### E. Application of the Section 522(f) Lien Impairment Formula

Although Section 522(f) does not specify the operative date for purposes of applying the formula to determine whether a lien impairs an exemption, 11 U.S.C. § 522(a) defines "value" for purposes of Section 522 as "fair market value as of the date of the filing of the petition . . . ." Thus, bankruptcy courts have held that the petition date is the operative date for all Section 522(f) determinations, including determinations regarding the value of the debtor's property and the value of the liens. *In re Wilding*, 475 F.3d 428, 432 (1st Cir. 2007); *In re Fox*, 353 B.R. 388, 393 (Bankr. D. Conn. 2006) (all determinations relevant to Section 522(f)(1) and (2) are made as of petition date); *In re Salanoa*, 263 B.R. 120, 123 (Bankr. S.D. Cal. 2001) (debtor's residence is valued as of petition date).

Under Section 522(f)(2)(A), the Debtor may avoid any portion of the Lien to the extent that the sum of the Lien, all other liens, and the amount of the Debtor's homestead exemption exceeds the value of the Debtor's interest in the Property. The value of the Property here has been determined to be $71,833.00 and the Property is encumbered by Hebrew Home's Lien of $35,828.24. As the $75,000.00 homestead exemption exceeds the value of the Property, Hebrew Home's Lien would impair the Debtor's exemption and must be avoided.

### V. CONCLUSION

The Debtor has met its burden of proof on each element of its claim under Section 522(f) and has, therefore, established that the full amount of Hebrew Home's Lien may be avoided. Hebrew Home has failed to sufficiently rebut the Debtor's expert opinion evidence supporting the Property's fair market value. The Debtor has therefore established, for purposes of 11 U.S.C

---

order regarding expert witness disclosures and reports, the Court denied this request. Hebrew had notice of the Debtor's intended use of Mr. Aiello and CMA No. 1 as of May 21, 2021, the date that the Debtor first filed its Motion, because CMA No. 1 was included as an attachment. Hebrew Home therefore had a sufficient and reasonable amount of time within which to prepare an expert report for this evidentiary hearing.

§ 522(f), that the fair market value of the Property on the Petition Date was $71,833.00, that the Lien is valid, and that the value of the Lien is $35,828.24. The Debtor has also established that the Debtor's homestead exemption exceeds the value of the Debtor's interest in the Property and, as a result, the entire amount of Hebrew Home's Lien must be avoided under Section 522(f).

Accordingly, the Debtor's Motion to avoid Hebrew Home's Lien under 11 U.S.C. § 522(f) is **GRANTED**. An order consistent with this decision will enter separately.

**IT IS SO ORDERED** at Hartford, Connecticut this 10th day of December 2021.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut